Mr. Whitburn. The third case on our docket this morning is 24-40141. R.W. v. Clear Creek Independent School District. Mr. Whitburn. I may it please the court, Mark Whitburn for plaintiff. The Individuals with Disabilities Education Act creates a right enforceable in federal court to the free appropriate public education required by that statute. The United States Supreme Court has made that clear for 40 years since Smith v. Robinson in 1984 and since Honig v. Doe in 1988. However, before a student or his parents may enforce that right in federal court, they must exhaust administrative remedies. In 20 U.S.C. 1415, Congress laid out a complicated set of procedures for administrative due process hearings for that purpose. The primary question before this court is what happens when a plaintiff prevails in an administrative due process hearing but the school district does not comply with the orders issued by the hearing officer. The First Circuit, the Third Circuit, the Ninth Circuit, and the Tenth Circuit have held that a plaintiff can bring a failure to implement claim in federal court. After all, that would be the only way to serve the purposes of the IDA itself, which creates that right enforceable in federal court to the free appropriate public education required by the statute. These courts point to the fact that the IDA is a comprehensive remedial scheme and that it is unthinkable that it could fail to provide a mechanism for judicial enforcement of the administrative procedures prescribed by the statute. The primary case cited on the other side of this issue arises out of the D.C. Circuit, B.D. versus District of Columbia. However, this case does not create a true circuit split on this key, on the key issue. The D.C. Circuit in B.D. simply held that one specific provision of the IDA, 20 U.S.C. 1415I, does not by itself create a cause of action for failure to implement. That provision indicates that any party agreed by the findings and decisions of the administrative hearing officer shall have the right to bring a civil action with respect to the complaint presented. And the D.C. Circuit pointed out that, well, that language only refers to a party agreed by the findings and decisions of the administrative hearing officer, but a petitioner who actually prevails in front of the administrative hearing officer doesn't have a grievance with respect to the findings and decisions. There's no question that in that respect, the D.C. Circuit's holding conflicts with that of, for example, the Third Circuit's holding in D.E. versus Central Delphi School District, because in the Third Circuit, the hearing officer is agreed for purpose of that provision when the school district does not implement the hearing officer's decision. The Third Circuit in D.E. in essence said, yes, the statutory language in that particular provision refers to agreed by the decision of the hearing officer, but when you read it in the context of the statute at large, really you're talking about a plaintiff who is aggrieved in general. However, on the broader issue of whether there is a failure to implement claim under the IDA, the D.C. Circuit in B.D. does not truly differ from the other circuits. In fact, it specifically noted that there was likely an implied cause of action for failure to implement under the statute. The problem was that the plaintiff in B.D. had forfeited that argument by never making it. The plaintiff in B.D. had only indicated that, had only pointed a foregone conclusion to 1415I and said that that particular language allowed a plaintiff to make a failure to implement claim and never said anything about the overarching statute and having to read it as a whole. The D.C. Circuit said, well, we can't help you with that because you didn't make the argument, but if you had made the argument that there is an implied cause of action under the IDA, we likely would have found that there was. In fact, as a lower court in the D.C. Circuit in the Benoit case has noted, this notion of an implied cause of action is essentially the same notion that was expressed by the First, Third, and Ninth Circuit in their respective decisions on this issue. So with respect to the overarching idea of whether there's a failure to implement claim under the IDA, all of these circuits really agree. In fact, the DE case in the Third Circuit . . . I guess I want to get back to the text of the statute because it just says a party agreed by the findings and decision shall have the right to bring civil action. So you've got to be agreed by it. So you're saying R.W. was agreed by the hearing officer's decision? The Third Circuit would say that you can interpret 1415I that way, that really what's going on in 1415I is that a party has to be agreed generally, that even . . . that although it specifically references agreed by the decision . . . Tell me how that helps you, assuming I accept agreed generally, whatever that means. R.W. got a decision in R.W.'s favor. So how are you aggrieved by a decision in your favor? The way that the Third Circuit puts it in DE is that you're aggrieved because there were not specific enforcement provisions within the hearing officer's decision. On that issue, the D.C. Circuit disagrees. So I won, but I lost. You won, but you lost because there was nothing in the hearing officer's decision that allowed for the enforcement of that provision. Since hearing officers don't have their own enforcement capabilities, the Third Circuit say, really, in that sense, you can be viewed as having been aggrieved by the decision. But really what the Third Circuit is saying is that, along the same lines as what the D.C. Circuit is saying, is that you can't really read 1415I-2 in isolation. If you were only going to focus on that provision of the statute, yes, it could be arguable because that provision only explicitly points to the being aggrieved by the decision of the hearing officer. But when you look at the statute as a comprehensive remedial scheme, either you have to read 1415I-2 as slightly different from what it says in the way that the Third Circuit does, or you have to say that there's an implied cause of action in the case that the U.S. Court has seen in Title IX. And so the Supreme Court in Title IX, with respect to Title IX, basically said, look, there's no cause of action directly in Title IX, private cause of action, but you have to imply one for a variety of reasons, four reasons specified in the court V. Ashe case by the Supreme Court in 1975. Basically what the D.  Circuit is saying in B. D. with respect to the I. D. A. is, you would have to look at an implied cause of action based on the comprehensive remedial scheme put forward by the I. D. A. But since the plaintiff in that case didn't bring that argument to the court, they couldn't go down that road. If they were going to go down the road, or if this court wanted to look at it through the analytical framework posited by the D. D.  First, Third, Ninth, and Tenth Circuits, then you would have to look at the framework put forward in court V. Ashe, which governs, is the Supreme Court case governing implied causes of action. There, the Supreme Court said, well, you have to look at a statute to see whether four factors apply. One, whether the statute was enacted for the benefit of a special class of which the plaintiff is a member. Here, clearly true. The I.  A. was enacted for the purposes of protecting individuals with disabilities. The plaintiff here is clearly a member. Consideration of the legislative history. Here, the legislative history all points for the idea of the I. D. A. being a comprehensive remedial scheme. Senate Report 180-185, which was specifically referenced by this case, the I.  versus New Caney Independent School District opinion explicitly identifies strengthening effective enforcement of the law as a primary purpose of the I. D. A. That same Senate report affirms that states and school districts must be held accountable for complying with the I. D. A. Well, how is, are the states supposed to be held accountable for complying with the I. D. A.? That's built into the I. D. A. itself. In fact, the findings of the I. D.  and the findings of Congress that are built into the I. D. A. in 20 U.  C. 1400 C. 1 make that clear. Congress there found improving educational results for children with disabilities is an essential element of our national policy that while states, local educations, educational service agencies are primarily responsible for providing for all children with disabilities, it is in the national interest that the federal government have a supporting role in assisting that process and ensuring equal protection of the law. That can't happen if it's really ultimately only left to the states to hold themselves accountable. The third court v. A. Factor is, well, you shouldn't imply a cause of action if it would frustrate the underlying purpose of the legislative scheme. But all of these courts, the first, the third, the ninth, the tenth, they've all found, as has the Supreme Court in the Smith v. Robinson and the Honig-Rideau cases, that it would not frustrate the underlying purpose of the statute or the legislative scheme to enforce federal rights in federal court. In fact, it would frustrate the statute scheme to do the reverse. You have to have a failure to implement a claim here. And then the fourth court v.  Factor in terms of how one is supposed to determine whether or not there's an implied cause of action is whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the states. Well, here it's not. As the findings built into 20 U.S.C. 1400 themselves make clear, it's of national interest. This is a federal statute. These are federal rights. They have to be protected by federal courts, as the Supreme Court again has made clear in both of the cases that I referenced. You don't have to look at it through that lens. You don't have to look at it through the lens of an implied cause of action. But that's essentially what the D.C. Circuit, the only outlier circuit that, under the facts presented to it and under the theories presented to it, did not find a failure to implement a claim. That's basically what it says. Look, if you would have presented this as an implied cause of action case, we would have gone with you. But you didn't. You forfeited that claim. The First, Third, and the Ninth Circuits don't put it that way. They basically say, look, however you're going to interpret the statute, you have to look at it as a comprehensive remedial scheme that must allow for rights protected in the federal court. And if you don't do that, you've eviscerated the purpose of the statute. The Ninth Circuit is, the Ninth Circuit's opinion in the Porter case is specifically valuable on another point as well, which is that one of the arguments that the school district has made in this case is, well, why don't you just leave it to the Texas Education Agency? Why don't you just allow them to take care of any kind of implementation concerns you have? Well, one point specifically about that, of course, that we've made in the briefing is that the Texas Education Agency already made its findings in March of 2023, which was months before the implementation period was even going to be over. But the Ninth Circuit has more to say about that case, about that in the Porter case as well. The Ninth Circuit basically says, look, the IDA as a comprehensive remedial scheme already outlines what the administrative exhaustion is. It's the due process hearing. We can't just foist another level of administrative exhaustion onto the statute. That's not in the statute. And that would frustrate the purposes of the scheme. That would frustrate what Congress intended for the IDA to accomplish, because IDA ultimately wants federal rights to be protected, both nationally and in federal court. If you don't do that, basically you're leaving it to the states to hold themselves accountable, and that's not going to get equal protection under the law, which is, again, what the First, Third, Ninth Circuits have said, and the Tenth Circuit has agreed with the First Circuit on this. In the Porter case, the Ninth Circuit also made the following point, which is that, look, the idea of exhaustion by its nature implies that you're going to get to the final step at some point. We talk about administrative exhaustion, but talking about administrative exhaustion essentially means you've got to exhaust it in order to get somewhere else. Well, where is that somewhere else? It's federal court. It's the vindication of federal rights in federal court. If you interpret the IDA as a scheme in which it's ultimately the plaintiff can never get there, because all the school district has to do is ignore the hearing officer's order, and the only thing that the plaintiff can do about it is go back to a hearing officer, get another order, which the school district will ignore, or go to the Texas Education Agency and hope for the best, that's not really a national, federally protected vindication of federal rights. Thank you. May it please the Court, my name is Kyle Stone, and I'm here with my co-counsel Amy Tucker. We represent Clear Creek Independent School District, the appellee in this case. This court should affirm the district court's decision on the IDEA claim, the Section 504 claim, and the Section 1983 claim. The district court properly dismissed all three claims. The IDEA claim. First, Mr. Whitburn spent some time discussing jurisdiction. That was the focus of his presentation. To start, I'd like to observe that appellant's complaint says that Section 1415I is the basis for their IDEA jurisdiction. That's on page 79 of the record. So the argument that there's some other basis for jurisdiction under the IDEA, it wasn't pleaded in the complaint, and the district never had an opportunity to respond to any other arguments about jurisdiction under the IDEA. The only briefing on implied causes of action before this court is the district's rather cursory briefing observing that there's a presumption against implied causes of action. In his briefing, appellant did not make any arguments that there was an implied cause of action. Court v. Ashe wasn't discussed at all, and the four-factor test wasn't done at all. So this court, it really deprived the district court of an opportunity to consider those arguments, and under this court's error preservation doctrine, those arguments should not be considered. Turning to the plain language of the statute, Section 1415I of the IDEA states that a party must be aggrieved by the findings and decision of a hearing officer. This court cannot add or subtract to that language because it says by the findings and decision of a hearing officer the argument that appellant makes that instead it should be aggrieved by the school district's decision or aggrieved by the school district's failure to implement should be rejected. In addition, appellant states sort of characterizes it as a 4-to-1 circuit split. The circuit split is actually more properly characterized as a 3-to-3, so the 2nd, 4th, and D.C. circuits have concluded that a failure to implement claim cannot be accommodated by the IDEA's plain language. That's Antkowiak v. Ambach from the 2nd Circuit, Robinson v. Penderhughes from the 4th Circuit, and B.D. v. District of Columbia from the D.C. Circuit. On the other side is the 1st, 3rd, and 10th Circuit. The 9th Circuit decision in Porter briefly discussed the issue in dicta as appellant acknowledges in their briefing and therefore isn't really exactly weighing it on the split. If we were to consider that dicta, it would be 3-to-4, but it's more properly characterized as 3-to-3. Based on the plain language of the statute, and that is the 1st argument that the district court considered on the IDEA claim finding that issue dispositive, the district court declined to consider the school district's remaining arguments, and while this court may affirm on either that basis or any of the other bases, I'll also outline the other additional arguments that were offered to the district court although the plain language of the statute is outcome determinative here. Additionally, the statute of limitations. Nowhere in his briefing nor during oral argument does appellant address the statute of limitations. The IDEA contains a 90-day statute of limitations. That limitations period begins running the date the hearing officer's decision is issued. So here, the hearing officer's decision was issued in November of 2022. Three months or 90 days later would have been February of 2023. This case was not filed until September of 2023 over six months after the 90-day limitations period expired. Now, while one may reasonably think how could we discover a failure to implement within 90 days? The D.C. Circuit pointed out that that limitations period actually confirms that a failure to implement claim isn't contemplated in section 1415I of the IDEA because if it were contemplated, then it would expect parents to discover understand the contours of a failure to implement and file a case all within 90 days when implementation may not even occur fully within 90 days. In this case, it took longer because the hearing officer ordered implementation through the end of the school year, which was approximately a six-month or five-month period in this case. So, saying that it should have been discovered wouldn't have made sense under the limitations period and that ties in with the various canons of construction, which the court need not rely on if the plain language of the statute... You're saying they could have filed a failure to implement claim in federal court if they had done it within 90 days? No, Your Honor. What are you saying? I'm saying, first, that they're not aggrieved by the findings and decision of a hearing officer, but even if this court were to assume that there were an implied cause of action for a failure to implement, the 90-day statute of limitations would bar the claim anyway, so it would be untimely. And under US v. Ramming, statutes of limitations in statutes that waive sovereign immunity are jurisdictional in nature, and so it would be an independent basis for a lack of subject matter jurisdiction. So, turning to administrative exhaustion, this is the second issue that Mr. Whitburn addressed in his presentation. In short, the district agrees with the general principles that Mr. Whitburn conveyed with respect to administrative exhaustion. The IDEA contains a very sophisticated remedial scheme in order to address concerns by parents and school districts about violations of the IDEA, and under that remedial scheme relevant here, the IDEA's implementing regulations in the 1970s created a mechanism to address failures to implement. So, appellant's primary argument is, we've been afforded a right without a remedy, but as the district court properly observed, they have a remedy, just one that the federal courts can't provide at this juncture. The remedy is to file an administrative complaint with the Texas Education Agency, which, since the 70s, has had the authority to investigate and issue appropriate relief to address failures to implement. And so, the IDEA has been amended five times since the 70s. Congress is charged with knowledge of existing law. The regulations have existed. Congress appears to be satisfied with the administrative scheme that has been put in place to address failures to implement. And, to the extent that you had an administrative due process hearing, had a hearing officer order that certain things be implemented by the district. Correct. There was a hearing officer decision. And then there's a failure to implement. Allegedly, yes, Your Honor. And then, your remedy for the failure to implement is another administrative hearing. So, the state complaint procedure is different from a due process hearing. In fact, under the IDEA, it gives enforcement responsibility generally to the states. And, the state complaint procedure involves submitting a complaint to the TEA. The TEA investigates. That's an administrative hearing. Yes. Texas Education Agency, Your Honor. Administrative agency. Yes, it is an administrative remedy, but it is slightly distinctive. So, to back up a little bit, a due process hearing, a complaint is submitted to the TEA. The TEA routes it to an independent hearing officer. That hearing officer may either be an administrative law judge with the State Office of Administrative Hearings, or it could be an independent hearing officer that is perhaps a mediator or... Most positive outcome from the hearing officer is an order that the district implement the changes. Correct, Your Honor. Which is what the original hearing officer ordered. Correct. And then, let's say they don't. The district doesn't implement the changes. You do another administrative hearing. So, you could. You could file another due process hearing, but what... When do you exhaust administrative hearings and get a right to go into federal court? So, federal courts are courts of limited jurisdiction, and the statute states that a party who is aggrieved by the findings and decision of a hearing officer under 1415I may file a case in federal or state court. Unless a party becomes aggrieved by the findings or decision of a hearing officer, they couldn't file a claim under that section of the IDEA. You could win every administrative hearing and never get out of that orbit, though. Correct, but that would not... And never get the changes implemented. No, Your Honor, because... Well, people could keep not implementing changes, which would be the basis for you to file another, get another administrative hearing. Your Honor, respectfully, the Texas Education Agency has abundant resources to enforce compliance, so a hearing officer decision and a Texas state complaint for a failure to implement are different. So, the Texas Education Agency has amiable authority to coerce compliance if it needs to. Among other things, it can withhold state funds. It can withhold federal funds that are given under the IDEA. It can order compensatory education. It can order monetary reimbursement. And if the school district doesn't take the actions that it needs to, it has the authority to impose a monitor, to impose a conservator, to take over the school district, have a board of managers, or a conservator team. So, the suggestion that the Texas Education Agency doesn't have the authority or the ability to provide the relief the appellant is seeking in this case is inaccurate. And TASB's briefing, Amicus TASB's briefing on pages 10 and 11, goes over the authority that is set forth in the regulations that the TEA has in this area. And it's wide-ranging, Your Honor. Give us, have there been examples where there's actually been relief granted by the TEA where it was contended that the order wasn't followed, the agents, the due process hearing order was not followed completely? So, the TEA special education investigation reports are not published. However, from personal knowledge, our firm is aware that the TEA frequently issues orders in favor of parents. What's in the record? Or what can we take judicial notice of? The court may take judicial notice of the authority that is set forth in the statute and regulations under which the Texas Education Agency has the authority to grant this type of relief. In terms of cases, failure to implement cases are not all that common across the nation or specifically in the Fifth Circuit. Our research revealed, and I don't believe that appellant's research revealed any additional, that there is only two cases, including this one, that have ended up in federal court in this circuit with respect to failures to implement. What about other circuits? There are more. So, for example, in Wisconsin, the TS case was cited in the district's briefing, and in that case, the district court held that the administrative state complaint process was the only avenue in that state in order to vindicate a failure to implement issue. Likewise, in Connecticut, the Brennan court concluded the same, but as Mr. Whitburn correctly pointed out, the circuits are not in agreement on that issue either. The Ninth Circuit and Porter said the opposite. So, in addition to having a circuit split on what the language aggrieved by means in the IDEA, there's another circuit split on administrative exhaustion where circuits don't agree on whether or not the party needs to go back to the state complaint procedures if a failure to implement claim were viable. Next. So, that covers all of the grounds for subject matter jurisdiction. Next, I'm turning to the Section 504 claim. Section 504 of the Rehabilitation Act prohibits discrimination, quote, solely by reason of an individual's disability. According to this circuit's precedent in Delano Pyle, a showing of intentional discrimination is required in order to meet the strictures of Section 504. Now, the contours of intentionality are a little bit unclear in this circuit. We know that it's something more than deliberate indifference. And it has often been framed as discriminatory animus by this court and the lower courts. Most recently, J.W.V. Paley, which is a 2023 decision out of this court, confirmed that discriminatory, a showing of discriminatory animus is required to survive at state and pursue a viable Section 504 claim. In that case, the school district's school resource officer tased a disabled student on multiple occasions in order to prevent them from leaving the school. And the family sued, alleging that the tasing incident was a result of disability discrimination. However, they were unable to present any evidence of discriminatory animus. And while the district is aware that that case was resolved at the motion for summary judgment stage, and therefore evidence was considered, the same issue arises here, where in the pleadings there is no allegation of facts that would support an inference of discriminatory animus by the school district. The only allegations that go to intent suggest some sort of dislike of the parents. No intent to discriminate against the student on the basis of his disability. In fact, I believe that it's uncontroverted that the student's teachers are very fond of the student and deeply want him to succeed. For all of the aspects where appellant is arguing that a failure to implement the hearing officer's decision can't state a claim under Section 504, this court's decision in DA versus Houston Independent School District is dispositive. In DA, this court confirmed that a failure to comply with the IDEA standing alone is insufficient to state a claim for disability discrimination. Next, the Section 1983 claim. So, Section 1983 imposes liability against municipalities if properly pleaded and, assuming evidence is shown at a later stage, it requires three elements, an official policy by an official policymaker with policymaking authority, specifically final policymaking authority, and that action needs to be the moving force behind the constitutional violation. So, here, our appellant does not cite an official policy. Rather, they cite a single delegation of decisionmaking authority by stating that they believe the district's Board of Trustees delegated authority to implement the hearing officer's decision to its special education department. Under Houston Independent School District versus Rivera, which is out of this court, this court confirmed that a delegation of decisionmaking authority would be insufficient to state a claim for Section 1983. Additionally, there is no official policy that has been enacted or is cited, so it appears that appellant is trying to state some sort of customary policy, which is when there's a longstanding practice of conduct that would give an inference of policy as opposed to some sort of official board resolution, board policy, or enactment. However, a single incident is unable or insufficient to state a claim for Monell liability. In fact, this court recently reaffirmed just earlier this year in the city of Houston v. Vardemont that a single incident will generally never give rise to municipal liability. Additionally, the last point I'd like to make is that in his briefing in the district court, appellant argued that ratification was the basis for Monell liability. He apparently reversed course on that in their briefing before this court. I saw a argument that they never made a ratification argument. On page 185 of the record, it is the sole argument that they made in the district court with respect to Monell. And for those reasons, we ask you to affirm. Thank you. I'd like to point in the first instance to the very first sentence that I believe my colleague, Mr. Stone, made, which was that in his view, in the school district's view, the district court properly dismissed all of plaintiff's claims. Basically, in effect, that means that under no cause of action in the school district's opinion would plaintiff have an opportunity to get to federal court to vindicate federal rights. Basically, the school district is claiming that there is no avenue for plaintiff to get to the protection by federal courts of the federal rights mandated by the Individuals with Disabilities Education Act. With respect to the issue of an implied cause of action, my colleague, Mr. Stone, contends that essentially that we've waived that claim because we didn't make that particular claim in the briefing. But courts have held as the Benoit v. District of Columbia court in the D.C. Circuit itself that this is essentially the same argument as that made by the 1st, 3rd, and 9th Circuits that are just not using that term. The 1st, 3rd, and 9th Circuit talk about the comprehensive overarching scheme. The 1st, 3rd, and 9th Circuit talk about how it would leave a gaping hole in the IDA if you did not have a failure to implement claim. The 1st, 3rd, and 9th Circuits all say that you can't have a statute that doesn't allow for enforcement in that way. They're essentially talking about an implied cause of action there, although they do talk about as well that you can read the grieved person's provision in 1450. Are you saying you made that argument in your brief? Yes, exactly. We just didn't call it an implied cause of action. But you cited the cases. We cited the cases. Right. The 1st, 3rd, and 9th Circuits are all making an implied cause of action argument. They just don't call it that. They don't cite court v. Ashe. But that's what the argument is. Mr. Stone also made mention of the fact that the 4th Circuits have all weighed in on this in the same way that the D.C. Circuit has. However, it should be noted that the Ancoviac case in the 2nd Circuit and the Robinson case in the 4th Circuit, these were 1988 and 1987 cases. These were cases that arose before the IDA even took its current form in 1990. The only modern case out of any circuit that has arisen on, to some extent, the other side is the D.C. Circuit case in B.D. And we've already talked about how the D.C. Circuit really, when you look at it in an overarching manner, is not really different from the 1st, 3rd, and 9th. With respect to the statute of limitations argument, the idea that a failure to implement a claim should be made within 90 days, yes, all that does is indicate that 1415I was really talking about what do you do if you're aggrieved by the decision? You've got to appeal within 90 days. Okay, but that doesn't make any sense if you're talking about a failure to implement a claim when you... So what is the cause of action? What is the statute of limitations under the statute for the claim you're positing? Well, I think to the extent that the 90 days is useful at all, which I would maintain it's not, you would have to say from the time that the plaintiff realized that there was a failure to implement, and that couldn't be until after the semester was over in which the school district was supposed to be implementing it. In this case, there was some thought that the school district would continue to implement in the following semester. Where do we get that from the statutory language? Well, we can't, but in the DG versus New Caney case, a similar issue arose where this court was confronted by the task of figuring out what the statute of limitations for attorney's fees would be, and this court considered that 90 day statute of limitations and said it couldn't be that. That 90 days couldn't function that way because the hearing officer can't award attorney's fees and therefore there's no sense in making from that statute the statute of limitations. And therefore what this court did in DG versus New Caney is say you have to look outside the statute. You can't find the statute of limitations within the statute. And so for my purposes I would think that as soon as it becomes clear that the school district has failed to implement, as soon as the plaintiffs have constructive knowledge of that fact, then you could take 90 days from that or you could take the entire IDA's general statute of limitations which is two years. I think either would be perfectly fine, but it can't be that 90 days. You have to look outside the text of the statute for that as this court did in the New Caney case. Thank you.